The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention. The Court is now sitting. God save the United States and this Honorable Court. Thank you. Good morning. Please be seated. We have three cases set for oral argument today and we will start with Design Gaps v. Distinctive Design. Mr. Hess. Thank you, Your Honor. If it pleases the Court, my name is Todd Hess. I do represent the appellants in this matter this morning. I have reserved five minutes of my time for rebuttal. What we're here to argue this morning, Your Honors, are the dismissals in this case from the lower court based upon reis de decada and collateral estoppel arguments using an arbitration that was associated with this matter. Of course, we're not claiming that you can't have reis de decada or collateral estoppel with respect to arbitration. Matters within arbitration, but the rules. How about an unconfirmed arbitration award? Unconfirmed. And it's interesting, Your Honor mentions that. We did have finally a hearing last week in South Carolina concerning whether it would be vacated or not. We're still awaiting a decision on that. Your Honor is right. It has not yet been confirmed. So where we are just factually, it was confirmed by the district court, that was vacated by this court, the parties went to state court. With one side asking the state court to confirm, one side asking the state court to vacate. You had a hearing, but there's been no ruling. That's just factually where we are right now? That's correct, Your Honor. With that, before we leave that issue, as it factually stands now, an unconfirmed award is different than a confirmed award for purposes of reis de decada collateral estoppel, aren't they? I mean, there's law out there that talks about that, but a lot of this preclusive law is for full faith and credit purposes. So I don't know that you have full faith and credit issues arising from an arbitration. There's some law that allows it just with unconfirmed arbitration, but that's a question. I mean, I know this all happened after y'all briefed, so I'm not complaining, but does this make any difference to us? I mean, are you going to argue this? Do we have to decide whether an unconfirmed arbitration award, because that's where the status is now, is sufficient for this preclusive effect before we even get to the decisions? Should we wait? What should we do from your perspective? Yes, Your Honor. The appellants actually do agree that we should wait, that there's a lot of issues here with respect to a... And just to walk through, again, I just want to make sure I have this clearly, we all agree that if the award were vacated, it would have no preclusive effect whatsoever. Like a vacated arbitration award gets no preclusive effect. We agree on that? That's correct, Your Honor. So, and that's basically what I'm here to argue today, whether a ratio, column, collateral estoppel should apply with that. Well, you briefed it as if it was a confirmed award, and you got some issues with that, but right now we actually have this interim status that's odd, that it is unconfirmed. It was confirmed at the time you briefed it. We're going to have a decision presumably pretty soon. I practice in state court in South Carolina, so sometimes those happen fast, sometimes they don't. But in the not too distant future, there should be an answer. But it can be different, obviously, whether it's unconfirmed like it is now, whether it's vacated or it's confirmed. That's correct, and the judge that heard it last week did indicate that he could probably get us a decision within a week, but unfortunately we've still not seen that yet, so we actually do not know. So what is it you want us to do now while we're waiting around? Well, I could argue why we think it doesn't apply in the event that it is. Even if you lose in state court, why do you think there's not preclusion? That's right. So with respect to that, as your Honor indicated, if we do lose in state court, notwithstanding that, there are preclusive effects, obviously because it's not a ruling. I mean, even if it does win, though, from that standpoint, we believe that the dismissals based upon res judicata and collateral estoppels should not apply. With respect to the res judicata rulings, those were based upon, there were two cases. One case was based upon one of the parties that was identified, that was not one of the petitioners, if you will, within the arbitration, but the respondents to the arbitration. Could you be a little more specific, give the name? I mean, rather than talk generally, just go right to it and tell us who you're talking about so we know what's going on. So the claimants in this case were Shelter and the Highsmiths. Shelter is a design company that was managing some upgrades to a house that were owned by the Highsmiths. My clients were the respondents within that arbitration. That was Design Gaps and David and Eva Glover, which were the owners of Design Gaps. So those were the parties here. Notwithstanding those parties, though, there were involvement of quite a few others with this. One of those people's name was one by the name of Jenny Butler. She had testified that she was not at all associated with Shelter, but she did actually have, with respect to some of the things that were happening over the course of the period that involved the design, basically, if you will, design plans, architectural design plans that my client actually had copyright to. She had passed those off on to somebody else. They were bringing in to do the work that my client was doing. She gave them to Distinctive Design. She did. That's right. And that's why we had a claim in this suit against her based upon vicarious and contributory infringement because of her case and passing along those designs. You have several of those claims and that if someone wasn't a party to the arbitration, and particularly when you sought to include them, some of them I think you sought to include and weren't allowed to, that that means you should have no preclusive effect. Oh, I'm sorry. So the issue I think that comes from that is that's not automatically showstopper in terms of you can't have preclusive effect. You don't have to have identity of parties if you have privies. What's your argument that whether it's the Hightower Estate versus Hightower or whether it's Butler versus Shelter, there's not privity? Well, when the respondents in that case did request that the arbitrator name Jenny Butler and Distinctive Design, as you had mentioned, as well as their owner, Brian Wright, of Distinctive Design, the respondents had requested that they actually be named third-party respondents in the arbitration so that at least his claims against them could perhaps even be brought up. The arbitrator, though, ruled against that, as you had alluded. Well, because the arbitrator said arbitration is a matter of contract. This individual is not a party to the contract. I can't force people who aren't parties to contracts to arbitrate this, right? And that's exactly what the arbitrator said. It's unambiguously correct. Right. Right. That's correct. So my question is, given that, why aren't they privities? Why isn't there privity or are they privies for purposes of claim preclusion, race, judicata, all that stuff? We believe, appellants believe, and it's actually in part based upon a decision that was made in a Northern District of West Virginia federal case where it was decided that if a party was decided that they couldn't be named in the arbitration, they couldn't be a party that would be held in privity with that decision. So that's the position that appellants have taken. That's interesting because that's a pretty big ruling. That's obviously not binding on us. Is there any appellate court law on that issue, sir? Unfortunately, Your Honor, nothing that we found in the Fourth Circuit, that decision from West Virginia was not appealed. So there was no decision on that otherwise. But we do feel like that. What's the name of the opinion you're talking about in West Virginia? That was La Rosa versus Pecora. It was actually an unpublished opinion, though, back in 2009. So an unpublished district court decision from West Virginia. That's correct. And that's probably why it's not in your brief. It should be in my brief. I think it is in my brief. Oh, okay. La Rosa versus what? Pecora. All right. That's just interesting because if we weren't in arbitration, I mean, if there was a separate case where the parties weren't there, you would not have that rule, right? I mean, it's pretty clear you don't have to have identity of parties. And I'm trying to just from how the rule works and, you know, why would it be different for arbitration versus if it was a case in court? Well, there's two issues. One with respect to the race judicata. We believe that the arbitrator, through his decision, did not give respondents an opportunity to discuss anything, if you will, with respect to Jenny Butler. But yet the arbitrator did make a decision with respect that there was no copyright infringement. That goes to the collateral estoppel issue with respect to Brian Rice and distinctive design. The collateral estoppel issue, if you will, pretty clearly relies upon, based upon First Circuit precedent, relies upon the state rules with respect to whether a decision should be considered preclusive or not. The primary factor that needs to be determined there is factor five of that collateral estoppel test, and that's whether the party was foreclosed to prior resolution of the issue of fact, had a full and fair opportunity to litigate this issue of fact in the prior proceeding. This we do not feel that the appellants had a fair opportunity to litigate this in the prior proceeding. Because the person wasn't a party? Because the person was. I guess I'll just go back to what Judge Potavon said. That just seems to be fighting the notion of privity because if people are in privity, they're treated, a person or an entity are in privity, they are treated as being literally the same. But we think that privity effect got removed, if you will, in this respect, Your Honors, and that's, again, primarily because the arbitrator removed them. It did not. I just don't understand how that, the whole, again, the whole, take a step back. So the general rule is you can only get claim preclusion if the parties are the same. But what it means to be in privity with someone is even though lawsuit one was X versus Y, if X and, you know, X1 are in privity, then it is treated as if the initial lawsuit was between X1 and Y. That's what it means to say that X and X1 are in privity. Yeah, but it was the notion, at least of the appellants at that time, when like Jenny Butler with respect to the race judicata and privity argument was named that she was, the arbitrator actually determined that she could not be a party, if you will, to this lawsuit. Why would the arbitrator decide if they're in privity? The district court decides if they were in privity. It does, but we feel like the decisions made by the arbitrator in this case is the one that actually foreclosed that opportunity to name her. Is there something about her and, her relationship is with Shelter, right? Is Butler and Shelter, I mean, that's the connection. That was the connection that the court made, Your Honor. Yes, that's correct, but it was not the connection that actually existed based upon the testimony of her now deceased husband. So you've got two issues I think you could make. One, it seems like you're saying because you weren't allowed to bring them in, that's enough, but that seems hard because that almost eliminates the privity concept. The other thing is you could say the district court was wrong in declaring or deciding they were in privity. It sounds like you have an argument on that too. Could you say what that is? Again, if there was really no connection, stated connection at all, that Jenny Butler had to Shelter, which was one of the claimants that the decision was made in favor of within the arbitration, then... Isn't it a company owned by, I mean, it's a company that she and her husband own? Well, her husband owned it at the time, was the testimony that we got within the arbitration. For some reason, they wanted to make sure that Jenny Butler was not at all connected to Shelter. We don't know the reason why, but the testimony of her late husband now, obviously, unfortunately, was that she was not really connected at all to Shelter, was the testimony that we got in the arbitration, Your Honor. So we think that that testimony there itself does remove her at all from that decision from Shelter for some reason, that they wanted her removed. You're getting close to the end of your time, but I want to identify an issue I'd like for you to be prepared to talk about on rebuttal, if you would, and that is an issue that's not briefed, and it's the effect of what you said of Mr. Butler's death. And if that creates any issues for us, I mean, I know there have been some notices filed, but I don't know if there's been an order issued, and I'm trying to see if that creates some complications for this appeal. Yes, Your Honor, and I'd be happy to address that during my rebuttal time. All right. Thank you. And I did find that case, Mr. Hess, in your reply brief. All right. Thank you. Ms. McDonald. Good morning, and may it please the Court. I am Andy McDonald, representing today the appellees. Design gaps in the Glovers are essentially asking this Court to bend the rules of procedure and equity to allow it to go back in time and change some decisions that it made. First of all, do you agree we should wait to do anything until we hear about what is happening in state court with arbitration? I do think that we'll have an answer on that shortly, so potentially you won't have long to wait. However, my research in South Carolina, there is nothing that says an unconfirmed arbitration award does not have preclusive effect. But certainly you agree that a vacated arbitration award has zero preclusive effect. Yes, and that was... And it remains possible that the South Carolina court will vacate. It is possible, yes. So if this court would like to wait on their decision until after that is resolved, that is understandable so that the issue of whether an unconfirmed award does not have to be addressed. Because among other things, would the question be whether South Carolina law would give an unconfirmed arbitration award preclusive effect? I think it's whether that... I mean, I actually think that's itself a choice of law question, because as Judge Quattlebaum said, normally speaking, when we're talking about preclusion, it's because of full faith and credit. And the full faith and credit statute, the full faith and credit clause, the full faith and credit doctrines are about courts giving preclusive effect to the judgments of coordinate or sister courts, not about federal courts giving preclusive effect to... I mean, in the eyes of the law, the arbitrator is some guy who resolved the party's private disputes. And I'm not aware of any doctrine that says federal courts give preclusive effect to some guy's decision. So I believe you raised two issues there. So first, the question of whether state or federal preclusion law would apply. Initially, we briefed arguing that federal law would apply, and that was because the district court at that time had confirmed the award. At this point, that has been... But if state law applies in federal court, it's only because federal law decides that state law applies in federal court. Yes, and the Fourth Circuit has stated that when a state judgment is... Judgment, that's a really important word you just said there, judgment. An arbitral award is not a judgment. An arbitral award is some guy saying X has to pay Y money. That's not a judgment. Fair, and I'm speaking in terms of if it is confirmed by the state. Agreed. So we should just wait, right? I mean, you said... I mean, it's pretty rare when we get opinions out like the day after an oral argument, so isn't this a little bit academic? I would say waiting is probably the best course of action since there's no disagreement on the impact of the outcome of that state court decision, and the judge did represent that he would get that order quickly. Do you have a... You heard me raise a question of Mr. Butler's death. Yes. I don't know that we have an order of substitution from state court. Do we... We have a notice of death, and does that create a problem for us? So it's my understanding that appellants have not challenged the dismissal of Mr. Butler, the claims against Mr. Butler in this appeal. Mr. Butler died in the pendency of the action, and normally something has to happen so that someone is representing the estate, and there was a notice of death. I don't know if there was a motion for substitute, and it looks like that was filed and it just proceeded without it being acted on, and there was notices again filed in the court of appeals, but the way that rule works is it's only for deaths that happen during the pendency of the appeal, and look, this seems... I know you all have been going on a lot, and it seems like a fairly ministerial sort of thing, but I'm wondering if it's an important ministerial thing. Well, our position would be that Mr. Butler and his estate at this point, his estate was never added within the 90-day period in district court because that case was actually resolved before the 90 days round. It wouldn't be adding. It would be substituting. It's that when a person dies, the estate just becomes what was the person, right? I don't think you have to add an estate after someone dies. So after a notice of death is filed in district court, you have the design gaps had 90 days to file to request a substitution of parties, and if that is not done within 90 days, Mr. Butler would be dismissed. So you think, okay. And they didn't do that. They did not do that, and they did not do that in Fourth Circuit either, and I believe what I can verify for you that... So that happens just effectively he's dismissed without an order? Is that how that works? I mean, I guess it was dismissed at the end in conjunction with the rulings on motions to dismiss and summary judgment on res judicata-type grounds. So he has been dismissed. You would say by operation of Rule 25, he should have been dismissed probably earlier from a procedural standpoint, but he has been dismissed. That's interesting. Yes, and we can file a motion requesting his dismissal to get that order entered. However, in the opening... How could he do that? Does the district court have jurisdiction to do that right now? I meant in the Fourth Circuit. I apologize. Yeah, but you can't do it in the Fourth Circuit because our rule, I think, talks about deaths during dependency of the appeal. Maybe we can. I don't know. All right. Thank you for that issue. And I'll just add on that point quickly. I don't know that there is a practical effect just because none of the dismissals of claims against Mr. Butler are on appeal here. And I addressed that in my brief as well. Before one more table-setting thing, this is a merits preclusion question, but it's one that's not brief but is bothering the heck out of me. Do you know any authority for the proposition? So, in general, claim preclusion has an absolute mutuality of parties requirement. I agree. B, I agree that if you're in privity with someone, you can be the victim. I'll just use this loosely. Like, right, preclusion has... There's always someone who wants preclusion and there's always someone who doesn't want preclusion. And I definitely know that you can be the victim of claim preclusion if you're in privity with someone who was a party in the previous proceeding. It seems a little weird to say that someone who wasn't a party in the first proceeding can get the benefits of claim preclusion on the theory that they're a privy of someone who was. And I will not purport to have done an exhaustive deep dive, but that seems a surprisingly hard question about which there's not a lot of authority. Do you have... I mean, obviously, you think... Well, I presume you think the answer is you can. But what's the argument for why you can? I mean, I sort of understand your friend on the other side's... The intuitive force of his argument to say, the idea behind claim preclusion is we all did this. We had the arguments, and anyone could make any arguments they wanted to make, and then we're done. And just because you thought of a new argument, a new theory, a new claim later, we had the time that we were going to do that thing, and we're done. And no one gets to make arguments now that weren't made then or claims now that weren't made then. And I get that completely when it comes, in some ways, to the victim of the preclusion. Like, you lost, and the person you're closely affiliated with, they lost too. It does seem a little intuitively weird to say, in a situation where they tried very hard to add someone, the arbitrator said, for reasons I think are right, I literally can't. That that party that didn't participate in the arbitration, despite your friend on the other side's attempting to make them participate in the arbitration, can then get the benefits of claim preclusion in a suit in which they weren't a party, the other side tried to add them as a party, and weren't able to do so in part, because the party that is, that's another way to think about this, the party that is now seeking to take advantage of claim preclusion resisted efforts to make them a party to the previous proceeding. That just seems weird. So, and this is an issue, actually, that I addressed in the related case where the appellants were seeking to vacate the arbitration award, and that was one of the arguments that they raised, although in the context of distinctive design, so collateral estoppel. But here, it was... And I get it in the context of issue preclusion. I'll say that, because in issue preclusion, we've long since accepted there's no absolute mutuality requirement. So this problem doesn't really come up in issue preclusion, because there generally isn't an absolute mutuality requirement. But claim preclusion, there is a mutuality requirement. Yes, and... I apologize, I lost my train of thought. You said in the previous case, you addressed it. Yes, thank you. So it was within Design Gaps' power to enter an agreement with Shelter to set aside claims that it wanted to reserve to pursue against Ms. Butler individually. And that has been done in the past. I can try to find that case. It's in my other... So say that... I'm sorry, before you go, will you repeat? I didn't quite get that. Yes, so Design Gaps had the choice to pursue those claims against Shelter that it could have brought against Jenny Butler separately. And all they needed to do was come into an agreement with Shelter to sever those claims and agree that it would not be precluded by the arbitration. And likely, Shelter would have not agreed, and the arbitrator would have been involved. But that was a procedural option that was available to Design Gaps, and they did not pursue that. So that addresses a bit of the fairness concern that you had. Yeah, but what about my more conceptual... This just seems odd, given... It's odd to say that a party that wasn't legally a party to the previous proceeding can invoke the benefits of claim preclusion. And I haven't been able to find a case that squarely says they can. I mean, there are cases that say there's no mutuality. The problem is, it seems like most of the cases about privity that I've been able to find are about issue preclusion, not about claim preclusion. I would agree with that. But just putting yourself into Ms. Butler's shoes, she already funded the defense of these same exact claims based on these same exact facts. It strikes me that Ms. Butler has a great defense, but that's 12b-6, not issue preclusion. Like, I'm... It's not me. The person who did all the bad stuff they're accusing of happening, I was doing in my capacity as an... I mean, obviously, her first order of view is, I didn't do anything wrong, but her second order of view is, to the extent that you're accusing me of doing anything wrong, every single thing I did wrong was in my capacity as an agent. Your claims against me fail under Rule 12b-6. They're just wrong, not preclusion. Well, we did also raise that argument in district court, but district court found the arguments of race judicata more persuasive. We also argued collateral estoppel in the event it didn't quite fit into the privity framework. Because once you go to there, there's no privity requirements anymore. Exactly, exactly. But the district court believed that race judicata was the best fit for the situation, and that was based on the reasoning that Jenny Butler was in privity with Shelter, and the case law, I agree with you, I haven't found a case specifically addressing this circumstance. However, it has not made any distinction between which side of the bee the person using or defending race judicata is on. So the same thing applies for Casey Highsmith in her capacity as trustee versus her individual capacity in the arbitration. Again, there was privity between... That seems easier. Yes. Well, the allegations directed at Ms. Highsmith as an individual and as a trustee were basically identical. And so the argument that those allegations are not related to the contracts and the performance at the Highsmith residence sort of brings hollow. Moving... So do we... This may relate a little bit to Judge Hyten's discussion. The claims against distinctive design for copyright infringement are deemed to be precluded, as I understand it. And I think I understand it to go like this. There was a claim that the... of copyright preclusion in the arbitration, and the arbitrator found that the explanation that they did not use those designs, any similarities were due to space constraints and things like that to be the reason. And then that finding goes to whether there was any infringement at all. So it carries over and is precluded from being relitigated in this case. Is that kind of how it goes? Yes. So Design Gaps chose to bring those indirect copyright claims in the arbitration, which necessarily required a finding of direct infringement by distinctive design. So that issue was decided. Yeah. And let me just say I find that merits-based copyright decision kind of interesting, if not dubious. I suspect, though, the answer is when we're talking about arbitration awards, the standard for challenging the substance of something is extremely high. Exactly. And assuming the award is confirmed, really at this point, we wouldn't be talking about the merits of the decision. It would just be what was decided and what is precluded. Well, there is some way to challenge the issue of award. But you're right, if it's all confirmed, that's bottled up in that decision. And I believe Design Gaps' main argument in support of not applying collateral estoppel is the full and fair opportunity to litigate issue. In the brief, Design Gaps argued that it was not afforded procedural opportunities that it would have been otherwise. So I just wanted to clarify, Design Gaps did have the opportunity to oppose Mr. Reese and did question him in the hearing. Can I switch gears to a single issue that is not racially collateral estoppel? And if I understand it, it's the breach of contract claim for unattributed use for the, I think, Bailey House. It seems like if it occurred, it was within the statute of limitations, period. So it's not barred. As I understand it, the district court held that that was waived. And I'm familiar. I read all about the back and forth, the cease and desist threat, and the fact that there was no action taken after that. And that just seems like to say there's, you know, it seems like at least plausible to argue that something like waiver, that that is where we're not expressed, we're talking about implied, that there's at least a question of fact as to whether that was a, you know, zero, you know, issues about whether something was waived. When they never said waived, they didn't sign anything that was waived. And we're, you know, attributing something pretty significant to them. So I have two points in response to that. First, this was on a motion for summary judgment. And Shelter provided evidence in support of its claim that the rights to enforce the promotional use clause had been waived. Design gaps provided... But that evidence was that back and forth a few years ago about other claims where they ended up not seeking a cease and desist letter about what's going on with other stuff when their relationship was a little better. So it was that back and forth communication. I shouldn't say better, but it probably was better, but not good. So it was the back and forth communication, but also the continued relationship between Design Gaps and Shelter. So they continued to work together on contracts that were not subject to this lawsuit. And so that implied that they, with full knowledge that Shelter was continuing to post on their website, continuing to post in these magazines, they were still working with each other. And that clause was still in all of the contracts, but not being enforced. Can you kind of say, look, I mean, this stuff's going on, we're working together, I don't like it, but it's overall okay with me given the benefits and burdens of everything else. But once the relationship goes south, I can still bring a claim that I've not officially waived. I mean, there seems like a lot to get to the waiver for me. Well, I am not aware of, and Discovery didn't reveal any conversations like that about some agreement that that clause was still enforceable. Well, I know there's not an agreement, it's just someone can have that in their head. Oh, and that is, that was the second point that I wanted to make. This issue of waiver is analyzed under an objective standard, not a subjective. So all evidence that Schultzer was seeing was that Design Gaps was not planning to enforce this promotional use clause. It threatened to, but then absolutely did not, and was just silent and continued working. So objectively, they had waived their rights. Thank you. And quickly, the summary judgment order, that should also be affirmed on the basis of latches against the Lanham Act claims. And that was based on the back and forth communication, the threat of litigation, and then failing to file a lawsuit within the time period allowed. And Design Gaps relied heavily on Whataburger in its briefs, and I just wanted to distinguish that quickly, because I'm not sure I did that very well in my brief. But Whataburger involved two companies, the company in Texas and the company in Virginia. So I'm not tongue twisting myself, I'm just going to refer to them that way. So the Texas company became aware of the Virginia's company use of the mark 30 years prior to filing its suit. However, it had not expanded to the Virginia market until shortly before it filed its suit. And so the Fourth Circuit's point there was that 30 years ago when it first had notice of the Virginia mark, it literally could not file a suit because they weren't in the same geographic area. And that is not the case here. And I'm about out of time. You are out of time. Thank you. Thank you. All right, Mr. Hess. Thank you, Your Honor. As I promised, with respect to the death of Ryan Butler, we had been notified by opposing counsel that he did in fact pass away upon a trip that he had with his wife, some vacation trip or something like that. It was opposing counsel, not her, but the other gentleman that handles that had asked me if we wanted to go ahead and just dismiss him altogether from the lawsuit. We did have him named individually, but also as the owner of Shelter. We did have Shelter that was continued to be named, and we also had the indication from that opposing counsel that Mrs. Butler was assuming ownership of Shelter. So we felt like that we had all the parties involved that should be involved probably already encompassed as opposed to naming the estate of Mr. Butler in the complaint, filing a motion to do that. So my question, though, was if there was no action taken on the notice of death, does that present any issues about whether we have a final order situation? And your colleague says, well, by operation of law, if there's no action taken after 90 days, someone is dismissed. We don't really have an order on that basis, but we got the later order of dismissal, and seems to say, look, given all that, we have effectively everything you would have by operation of the rules on this. It sounds like you don't really dispute that, or do you dispute that? We did have other parties named. They remained viable, if you will, with respect to being parties to this litigation that we had filed. So we felt like they continued to be covered. It was really just Mr. Butler himself that we felt like we didn't need to take action with respect to his estate because we did have Shelter named and we did have Mrs. Butler named where there was an indication that she was assuming ownership of Shelter anyway, to me. So based upon those indications, we at least chose not at that time to do anything in addition to filing a motion to name the estate of Mr. Butler as opposed to him within the litigation, Your Honor. But, yeah, the answer is we do not think that it affects, if you will, the other parties. In fact, their effect becomes changed a bit. In particular, since Mrs. Butler apparently had no ownership or at least was not named an owner at the time, but it was indicated to me that she became an owner at least upon the death of Mr. Butler. I did want to go ahead and address with respect to the waiver issue that Your Honor brought up over the course of my opposing counsel's arguments. We agree. I mean, each of the contracts were actually entered, if you will, on an individual basis for individual projects. We think that those promotional use clauses continued to carry through, notwithstanding, as you had indicated, when the parties were cooperating or they chose not to go ahead and enforce those. There were letters written. We did put those before the court, the letters indicating that they shouldn't do that anymore. They provide reasons either apologizing, opposing parties provide reasoning that they apologized for doing that or there are reasons that they ended up doing that. The problem for you a little bit is, number one, you didn't expressly reserve it. Number two, you kept allowing them, even after the cease and desist letter, it continued and you didn't take action up until then. Of course, my clients were basically relying upon the shelter and the other parties for business. They didn't want to compromise, necessarily, that business relationship, if you will. Basically, they hoped it's... I mean, I kind of raised an argument that might be in your favor, but why doesn't, from an objective basis, that create an indication that because of that business, maybe good reasons, I'm not going to burn the bridge yet? And not burning the bridge is effectively waiving it. Well, they didn't ignore it, obviously. It was brought up before shelter. It was brought up before Mr. Butler at the time that they were doing that and that they should cease and desist with respect to that. There was a cease and desist letter. And I see my time is up. All right. Thank you. Thank you both for your arguments. We'll come down and greet counsel and proceed to our second case.
judges: Stephanie D. Thacker, A. Marvin Quattlebaum Jr., Toby J. Heytens